Not for Publication

**United States District Court
for the District of New Jersey**

| | |
|---|---|
| HWASEUNG NETWORKS AMERICA CORP., *Plaintiff*, v. KAC INTERNATIONAL, INC.; DWIGHT DONG WON JOO; JUNG SOO JOO; KAC FOOTWEAR, INC.; HOWARD JOO; YENA JOO aka YAE NAM JOO; ZIPCO PLUS, LLC; JOO & JOO, LLC aka COLONY LAUNDROMAT, *Defendants*. | Civil No: 12-0586 (KSH) **Opinion** |

**Katharine S. Hayden, U.S.D.J.**

Plaintiff Hwaseung Networks America Corp. ("Hwaseung") commenced this action in response to defendants' alleged breach of a sales and marketing agreement. Defendants now move, for the second time, to dismiss the case based on the argument that the agreement contains an arbitration provision covering the claims asserted. The first motion was denied because defendants failed to provide the Court with a certified translation of the agreement at issue, which was drafted in Korean. The second motion, which was unopposed and is now before the Court, is denied for the following reasons.

I.    **Background**

Hwaseung is a New York corporation that distributes and sells various goods, including textiles and clothing. Pursuant to an agreement entered into with defendant KAC International, Inc., signed by defendant Dwight D. Joo on March 1, 2009, Hwaseung purchased goods from its domestic and overseas suppliers and sold them to defendants on credit. In exchange for a commission, defendants were required to resell the goods to third-party vendors, with payment

remitted to Hwaseung directly.  Beginning in 2009, however, Hwaseung alleges that defendants directed the vendors to make payments to KAC International instead. Hwaseung also alleges that defendants "diverted and misappropriated" its goods and unilaterally sold them to third party vendors without remitting payment.  As a result of this conduct, Hwaseung claims that it has sustained damages in excess of $907,090.09.

Hwaseung filed this lawsuit in January, 2012, charging defendants with "breach of contract, breach of fiduciary duty, breach of implied covenant of good faith and fair dealing, conversion, fraud, unjust enrichment …, fraudulent conveyance and misappropriation of trade secrets/proprietary information and RICO."  Defendants now move to dismiss on the basis that the agreement contains a clause that requires the dispute be submitted to arbitration.

## II.   Discussion

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 to 16, was enacted "to abrogate the then-existing common law rule disfavoring arbitration agreements 'and to place arbitration agreements upon the same footing as other contracts.'"  *Martindale v. Sandvik, Inc.*, 173 N.J. 76, 84 (N.J. 2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).  Section 2 of the FAA, on which the defendants here rely, provides that "[a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."

To compel arbitration, defendants must demonstrate that they have entered into an agreement with Hwaseung "to settle by arbitration a controversy," 9 U.S.C. § 2, thereby making the dispute "referable to arbitration" under 9 U.S.C. § 3.  The Court's review in this regard is narrow.  *See John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 137 (3d Cir. 1998).  The

Third Circuit has made clear that district courts must engage only "in a limited review to ensure that the dispute is arbitrable – *i.e.*, that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Id.* at 137; *see also Rite Aid of Pa., Inc. v. United Food and Commercial Workers Union, Local 1776,* 595 F.3d 128, 131-32 (3d Cir. 2010) ("[T]he court is limited to the construction of the arbitration clause and any contractual provisions relevant to its scope[.]").  Because arbitration is a "creature of contract, a device of the parties rather than the judicial process," *Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 350 (3d Cir. 1997) (citations omitted), matters will be referred to arbitration only "where a written agreement evidences an intent on the part of the contracting parties to arbitrate the dispute in question." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 172 (3d Cir. 2014).

In support of their motion, defendants direct the Court to a certified translation of the agreement at issue.  (Joo Certification, Ex. A).  The "arbitration provision" appears on page three, beneath the heading "DISPUTES AND LEGAL ACTION" and just above the signature line.  It provides that "[a]ll claims, disputes and nonfulfillment of agreement arising in relation to this Agreement shall be resolved through the mediation of the Federal Arbitration Committee in the United States."  (Joo Certification, Ex. A.)  The problem with this language, however, is obvious.  The parties agreed to "resolv[e]" all disputes under the contract "through the mediation" of an entity that, to the Court's knowledge, does not exist.  Does this amount to an unambiguous intent to *arbitrate*?  To answer that question, the Court must consider whether the terms "mediation" and "arbitration" are to be viewed as synonymous.

The FAA does not define "arbitration" and, consequently, "courts and commentators have struggled to do so."  *Harrison*, 111 F.3d at 350.  The Third Circuit has, however, indicated that "the essence of arbitration … is that, when the parties agree to submit their disputes to it, they have

agreed to arbitrate these disputes through to completion, *i.e.*, to an award made by a third-party arbitrator." *Id.* at 350.  The *Harrison* court added further that "[a]rbitration does not occur until the process is completed and the arbitrator makes a decision."  *Id.* at 350 ("If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.") (quoting *AMF Inc. v. Brunswick Corp.*, 621 F. Supp. 456, 460 (E.D.N.Y. 1986) (Weinstein, J.)). Additionally, other circuits have found that "classic incidents" of arbitration under the FAA include, among other things, an independent adjudicator who renders a decision that purports to resolve the dispute after considering evidence and argument from each party.  *See e.g., Fit Tech v. Bally Total Fitness,* 374 F.3d 1, 6-7 (1st Cir. 2004); *Advanced Body Care Solutions, LLC v. Thione Int'l, Inc.,* 524 F.3d 1235, 1239 (6th Cir. 2008).  Mediation, by contrast, is commonly understood to "involve[e] a neutral third party who tries to help the disputing parties reach a mutually agreeable solution."  Black's Law Dictionary (10th ed. 2014); *see also Unif. Mediation Act* § 2(1) ("[A] process in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement regarding their dispute.").

In *Advanced Body Care Solutions, LLC v. Thione Int'l, Inc.*, the Sixth Circuit considered these definitions, however approximate, to answer a question identical to that posed here: "is mediation arbitration?" 524 F.3d 1235, 1238 (6th Cir. 2008).  The court found that, while the FAA presumes "the arbitration process itself will produce a resolution independent of the parties' acquiescence," mediation "does not resolve a dispute, it merely helps the parties do so."  *Id.* at 1240.  On this basis, the court found that "because the mediation process does not purport to adjudicate or resolve a case in any way, it is not 'arbitration' within the meaning of the FAA." The Sixth Circuit then held that "the mandatory remedies of the FAA may not be invoked to compel mediation" and denied defendant's motion to stay the action pending arbitration.

While certain district courts outside this circuit have reached contrary conclusions, many have done so because either the "mediation" at issue provided for a final decision reached by a neutral third party, or the agreement itself made reference to other traditional hallmarks of arbitration. *See, e.g. Dobson Bros. Constr. Co. v. Ratliff, Inc.,* 2008 WL 4981358, at *10 (D. Neb. Nov. 6, 2008) ("Whether couched in terms of 'mediation' or 'arbitration,' a clause that mandates use of a neutral non-judicial forum for conducting a hearing and issuing a decision to resolve or settle the parties' dispute is enforceable under the FAA."); *Chambers v. Groome Transp. of Ala.,* 41 F. Supp. 3d 1327, 1348-49 (M.D. Ala. 2014) (referring to arbitration dispute arising out of an agreement that referenced "mediation" but also demonstrated the parties' intent to arbitrate "(1) in the title of the agreement, 'Arbitration Clause and Agreement,' (2) by the inclusion of the AAA's telephone number for an employee to obtain answers to 'questions about the arbitration process,' (3) by the language requiring that the AAA rules govern '[d]iscovery in any arbitration proceeding,' and (4) by the acknowledgment that the 'agreement to arbitrate is freely negotiated.'").

The agreement here does not permit such a finding. While defendants *now* submit that their reference to the "Federal Arbitration Committee in U.S.A. certainly is a reference to the American Arbitration Association," they do so in a footnote to their one and one-half page memorandum of law and without any proof regarding, or insight into, the parties' intention as to this term at the time the agreement was drafted. To the Court's knowledge, there is no "Federal Arbitration Committee." Hwaseung has neither responded to the instant motion nor indicated its acquiescence with regard to the relief requested. The Court therefore finds no evidence in the undisputed record that the parties intended to submit their claims to anything other than a traditional mediation. And because this Court understands that process to effect a reconciliation

but not adjudicate the matter to a final decision, it is not a true "arbitration" in the Third Circuit's eyes and therefore not within the FAA's scope. [1]

## III.   Conclusion

For the foregoing reasons, defendants' motion to dismiss is denied.  An appropriate order will be entered.

/s/ Katharine S. Hayden

Date: June 29, 2015                                      Katharine S. Hayden, U.S.D.J.

---

[1]          The Court also questions whether *all* defendants may properly seek the relief requested.  The only parties to the agreement are Hwaseung and KAC International, Inc.—the remaining six defendants are not even mentioned in the body of the contract.  It therefore stands to reason that, although the "arbitration provision" here fails on its own accord, it likely would be enforceable by, and applicable to, only those entities that actually agreed to arbitrate.  *See, e.g. Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1297 (3d Cir. 1985) (holding that a non-signatory parent corporation could not "by reason of [its] corporate relationship" enforce an arbitration clause, signed by a wholly-owned subsidiary, absent an express agreement to that effect.)